## Richmond

THE BULL RUN DEVELOPMENT CORPORATION, COLEMAN C. GORE, ROBERT B. YOUNG, HARRY J. DUFFEY, AND ALICE H. DUFFEY v. DOROTHY PATTERSON JACKSON.

June 22, 1959.

Record No. 4938.

Present, All the Justices.

The opinion states the case.

*J. Sloan Kuykendall* (*Stilson H. Hall; Henry H. Whiting; Thomas V. Monahan; Peter K. McKee; John R. Dudley*, on brief), for the plaintiffs in error.

*John S. Battle, Sr.* and *William A. Perkins, Jr.* (*Perkins, Battle & Minor*, on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

Dorothy Patterson Jackson, hereinafter referred to as the plaintiff, filed a petition in chancery in the court below against The Bull Run Development Corporation, hereinafter referred to as Bull Run, Coleman C. Gore, Robert B. Young, Harry J. Duffey, and Alice H. Duffey, averring that the defendants are in possession of certain real property belonging to her; that they have cut down trees, platted the land, sold lots and built roads, and she asks that the true boundary lines between the coterminous lands of the respective parties be ascertained and established, pursuant to § 8-836, *et seq.*, Code of 1950.

By agreement of the parties the suit was transferred to the law side of the court and the plaintiff's petition was treated as a motion for judgment.

The defendants, Duffeys, filed an answer admitting that they are coterminous owners with the plaintiff but denied that they had taken possession of land belonging to her. The defendant, Bull Run, filed an answer and grounds of defense in which it admitted that it had taken possession of the land in dispute and had exercised ownership thereof in the manner averred in the plaintiff's motion for judgment, but denied that it had taken possession of any land belonging to the plaintiff, denied that the survey and surveyor's report filed with the motion for judgment are true and correct, and averred that it had paramount right and title to the land in controversy. Defendants Young and Gore, officers of the Bull Run Corporation, filed a joint answer averring that Bull Run had a paramount right and title to the land in controversy.

Trial by jury was waived by all parties to the action and the evidence was heard *ore tenus*. After considering the evidence, exhibits, memoranda of authority submitted by counsel, and viewing

the land in dispute with counsel, the trial judge filed a written opinion holding that a grant to the plaintiff of the disputed area might be presumed and that the defendants had not shown subsisting, outstanding title in themselves or others to defeat this presumption. Final judgment was entered in accordance with his opinion, ascertaining and establishing the boundary line between the lands of the respective parties. To this order we granted a writ of error and supersedeas.

The defendants contend in their principal assignments of error as follows:

(1) That the court erred in adjudging and establishing the line between the lands of the plaintiff and the lands of the defendants because the plaintiff failed to establish her title to the land in dispute back to a common grantor or to the Commonwealth, and failed to establish title to the land superior to the title and possession of the defendants;

(2) That the court erred in presuming a grant to the plaintiff of land occupied by the defendants, thereby holding that the defendants had the burden of showing a subsisting and outstanding title in them or others to defeat said presumption;

(3) That the court erred in establishing as true and correct the boundary line between the lands of the plaintiff and the lands of the defendant as shown on the plat of R. M. Bartenstein and Associates, dated February 14, 1958, and as defined by the courses, metes, and bounds description contained in said final judgment.

(4) That the court erred in refusing to establish as the true boundary line between the lands of the plaintiff and the lands of the defendants the line established by Robert E. Rodgers, surveyor; and

(5) That the final judgment of the court is contrary to the law and the evidence and without evidence to support it.

The land involved is located along the crest and the west side of the crest of Bull Run Mountain. The mountain is situated in Fauquier and Prince William counties several miles west of U. S. Highway No. 15, running from Haymarket to Leesburg. It is an uncultivated, unfenced, rough, rocky and mountainous area. The plaintiff's land is mainly in Fauquier county on the western slope of the mountain and that of the defendants is mainly in Prince William county on the eastern slope of the mountain. For a great

number of years the land sold at a very low figure per acre, but has now become very valuable.

The southern portion of the plaintiff's land, which is coterminous with that of the defendants, was acquired by deed from Tacie G. F. Slater, bearing date April 24, 1952, and is referred to as the Lang or Slater tract. She deals with it in this action as phase one of her case.

The northern portion of the plaintiff's land which is coterminous with that of the defendants was acquired by deed from Donald D. Shepard, bearing date June 7, 1944, and is referred to as the Shepard tract. She deals with it as phase two of her case.

The defendants, Duffeys, acquired all of the land east of plaintiff's property from Everett M. Byrne by deed bearing date January 21, 1939. The Duffeys took possession of a portion of the land now in dispute and at one time operated a rock quarry and sold rock therefrom. In November, 1955, the Duffeys contracted to sell to Bull Run all the land they had acquired from Byrne. Since the date of the contract certain portions of the Duffey land were conveyed to Bull Run. After Bull Run purchased a portion of the land from the Duffeys a title examination and survey were made of all the land acquired by the Duffeys from Byrne. When the defendant's line had been located and established by Robert E. Rodgers, an experienced surveyor, Bull Run took possession of the land between the line claimed by the plaintiff to be her eastern boundary line and the line claimed by defendants to be their western boundary line, and within the area between said lines Bull Run platted the land, sold lots and built roads.

The eastern boundary line of plaintiff's Lang or Slater tract, referred to by the plaintiff as phase one of her case, was established by Robert Mason Bartenstein, a surveyor of many years' experience, and accepted by the trial judge as the true boundary line between the properties of the respective parties. The eastern boundary line of the plaintiff's Shepard tract, referred to by the plaintiff as phase two of her case, was also established by surveyor Bartenstein except that one point established in the boundary line of phase two of plaintiff's case was held by the trial judge to be incorrect and the correct point in the line thus established is shown on the plat accompanying the final judgment. The remainder of the line established by the court in phase two of the plaintiff's case is the same as established by Bartenstein.

The trial judge correctly stated in his written opinion that in order for the plaintiff to prevail "she must prove by a preponderance of the evidence: (1) That she had a perfect legal title to the land [in dispute] by showing an unbroken chain of title either to the Commonwealth or to a comon grantor * * *; or (2) That she has title to the land by adverse possession; or (3) Such a state of facts as will warrant the court in presuming a grant."

The trial judge held that the plaintiff did not establish by the evidence an unbroken chain of title back to the Commonwealth or to a common grantor and that she had not proved title by adverse possession. The plaintiff concedes that the findings of the trial judge as to these two points were correct and no cross-error was assigned.

Thus, the principal question involved in this appeal is: Did the plaintiff present such a state of facts as to warrant the court below in presuming a grant to the plaintiff of the land in dispute?

The defendants' first and second assignments of error will be treated together since they are so interrelated.

It is well settled that when, in a proceeding under §§ 8-836, *et seq.*, Code of 1950, to establish a boundary line, the title and right of possession of the coterminous owners are brought into dispute by the pleadings the same principles of law are applicable as would be applicable to the same subject in an action of ejectment. *Prettyman* v. *Duer & Co.*, 189 Va. 122, 136, 52 S. E. 2d 156, 163; *Brunswick Land Corporation* v. *Perkinson*, 146 Va. 695, 704, 132 S. E. 853, 855, 856.

As a general rule a plaintiff in ejectment must recover on the strength of his own title and when he relies solely on his own paper title, must trace it either from the Commonwealth or other common grantor, but it is well settled that he is not required to do this when he shows such a state of facts as will warrant the jury in presuming a grant. *Prettyman* v. *Duer & Co., supra*, (189 Va. at p. 137, 52 S. E. 2d at p. 163); *Spriggs* v. *Jamerson*, 115 Va. 250, 255, 256, 78 S. E. 571, 573.

The plaintiff concedes that she has not proved a perfect legal title back to the Commonwealth or a common grantor in phase one and phase two of her case, but asserts that she has established such facts as will warrant the court in presuming a grant. She relies on her testimony and that of other witnesses, particularly surveyor Bartenstein's.

The testimony of the witnesses for the plaintiff, other than surveyor Bartenstein's, was referred to by the trial judge in his opinion as being at best sketchy, inconsequential and of little value in determining the boundary line.

The plaintiff's testimony does not show she ever took possession of or exercised any acts of ownership over the land in dispute.

Surveyor Bartenstein based his testimony upon several recorded deeds and surveys. In his testimony relating to phase one of the plaintiff's case, he refers to a partition deed dated April 12, 1834, between Nathaniel Skinner, son of Nathaniel Skinner, deceased, and Cornelia Skinner, recorded in the clerk's office of Prince William county. This deed recites that Cornelia Skinner and Nathaniel Skinner, father of the younger Nathaniel Skinner, purchased in 1774 a tract of land in Fauquier and Prince William counties containing upwards of 1,000 acres, and that they afterwards sold to *Alexander* Lang all that part of said purchase which lies on the west side of said mountain. In the description of the two tracts of land divided between the Skinners in this deed it is indicated that the western boundary of one tract is "running on or near the high point of said mountain," with courses and distances given. The description of the other tract also indicates that the top of the mountain is the western boundary, "to the top of mountain Lang's line thence with the same," with courses and distances given.

Surveyor Bartenstein then refers to a deed of trust dated July 12, 1838, recorded in the clerk's office of Fauquier county between John Lang and wife to Richard Johnson, as trustee, which describes the Lang property as follows: "A tract or parcel of land * * * whereon the said John Lang now lives and bounded as follows: that is to say, running with a dividing line between Thomas W. Burch and the said Lang and running east to the top of Bull Run Mountain and thence south with the ledge of rocks to John Sullivan * * * containing 300 acres, it being land purchased by Lang of one Nathaniel Skinner."

Mr. Bartenstein reasons from the deed of trust and partition deed that the Langs owned 300 acres of land on the west side of the mountain to its crest. However, there is no deed of record from the Skinners to either Alexander Lang or John Lang. There is no evidence from which it may be found that Alexander Lang was ever in possession of the land in dispute and that he exercised acts of ownership thereover. There is no deed from Alexander Lang to

John Lang, nor does the record contain a will of Alexander Lang or proof that John Lang was the sole heir at law of Alexander Lang. While the deed of trust from John Lang to Johnson recites "a tract * * * whereon the said John Lang now lives," there is no proof from which it may be found that John Lang was in actual possession under claim or color of title of the strip of land now in dispute. There was no metes and bounds description in the deed of trust and it merely recites that the line goes to a point at the top of the mountain along a ledge of rocks to the line of another property owner. The corner or line of the other property owner has not been established.

The partition deed of 1834 between the Skinners refers to the western boundary on one of the parcels conveyed and recites "to the top of the mountain Lang's line thence with the same," with a metes and bounds description. The evidence shows that Mr. Bartenstein did not undertake to locate the lines established in this deed, but it was on the metes and bounds description that Rodgers, the defendants' surveyor, in part based his survey.

Four years after the execution of the Lang deed of trust there was a foreclosure and the property was conveyed to Amos Johnson. Missing links in the description and chain of title followed.

Bartenstein refers to a copy of the Henry Smith survey of September 27, 1873, which was attached to and made a part of plaintiff's deed dated April 24, 1952, and it called for "winding with the top of the mountain" as the eastern boundary line of plaintiff's Lang-Slater tract.

Mr. Bartenstein, in testifying with respect to the Smith survey, said: "My first step in making this field survey was a study of Mr. Smith's survey, since that was the most recent survey on that side of the mountain, and I found that there was a several-hundred foot error of closure in that survey as recorded. I found that his [Smith's] metes and bounds followed the crest of the mountain generally but not specifically, and therefore I ran the crest with a few more corners than he has shown, picking up a few more points down the crest to catch a few more bends in relationship to the value of the day as compared to the value of the property at the time he ran the survey."

Phase two of plaintiff's case dealt with two tracts of land, namely the Hill-Rector and Gregg tracts, which were conveyed to

her by Donald D. Shepard by deed dated June 7, 1944, conveying 1,462 acres.

There were many missing links in the Shepard chain of title. Although the Shepard deed conveyed to the plaintiff the property by a metes and bounds description in accordance with the Goode survey, the plaintiff's surveyor did not run the lines called for by that deed on the ground, nor did he establish the plaintiff's eastern boundary line as called for in the deed.

The evidence in both phases one and two of plaintiff's case fails to show that either plaintiff or any of her predecessors in title have been in actual possession, or that they have exercised actual ownership over that strip of land in dispute which lies between the conflicting boundary lines.

There is no evidence in this case on which the court can presume a grant to the plaintiff of land occupied by the defendants. Courts will presume a grant where one has for a long period of time held an uninterrupted possession of land while exercising proprietary rights. *Sulphur Mines Co.* v. *Thompson,* 93 Va. 293, 310, 25 S. E. 232, 235; *Prettyman* v. *Duer & Co., supra,* (189 Va. at pp. 138, 139, 52 S. E. 2d at p. 164). The possession necessary to afford a presumption of a grant must be actual, open, adverse, exclusive and uninterrupted, as well as inconsistent with the existence of a title in another. 20 Am. Jur., Evidence, § 236, pp. 231 and 232.

■ The plaintiff argues that she is not required to prove an unbroken chain of title. She claims that prior peaceful possession, actual or constructive, under color of title or claim of right by her or those under whom she holds, claiming to be the owner in fee, if proved, is *prima facie* evidence of ownership and seisin and is sufficient to authorize a recovery unless defendants show a better title. She relies on *Holladay* v. *Moore,* 115 Va. 66, 67, 72, 78 S. E. 551, 552, 553; *Prettyman* v. *Duer & Co., supra,* (189 Va. at p. 137, 52 S. E. 2d at p. 163); *Cottrell* v. *Pickering,* 32 Utah 62, 88 Pac. 696, and many other cases cited in her brief.

The principle relied on by the plaintiff that possession under color of title constitutes a *prima facie* title is under the great weight of authority restricted to those factual situations where the defendant is a mere intruder or trespasser without color of title. *Rhule* v. *Seaboard Air Line Ry. Co.,* 102 Va. 343, 346, 347, 46 S. E. 331, 332; *Tapscott* v. *Cobbs,* 11 Gratt. (52 Va.) 172; *Bradshaw* v. *Booth,* 129 Va. 19, 36, 105 S. E. 555, 560, 561, Burks Pleading and Practice,

4th ed., § 114, p. 225; 18 Am. Jur., Ejectment, §§ 37, 38, pp. 35, 36.

It has no application to facts in this case. Bull Run entered on the land in dispute after obtaining title from one who had been in possession of the land under color of title for more than fifteen years and who exercised rights of ownership over the property by operating a rock quarry for some time on a portion of it before the plaintiff acquired any color of title. The evidence does not show that Bull Run and the defendants Duffey had tortiously entered upon the land in dispute.

The judgment of the lower court establishing the boundary line set out in its order as the true boundary line between the plaintiff's and defendants' property is without evidence to support it.

The defendants, being in actual possession under color of title of the land in dispute, which they acquired by deed prior to the plaintiff's deeds, and having exercised acts of ownership thereon, have a title to the land in dispute paramount to that of the plaintiff.

The judgment of the lower court is reversed and the trial court is directed to enter an order fixing the true boundary line of the property to be that shown in the survey of surveyor Rodgers.

*Reversed and remanded.*