## Richmond

MILDRED FERRIS v. CAREY W. SNELLINGS AND MARION E. SNELLINGS.

November 27, 1972.

Record No. 7887.

Present, All the Justices.

*William M. Sokol (Whitticar, Whitticar & Sokol,* on brief), for plaintiff in error.

*Carroll E. Smith (Cox, Woodbridge and Smith,* on brief), for defendants in error.

POFF, J., delivered the opinion of the court.

This is a boundary dispute. Plaintiffs Carey W. Snellings and Marion E. Snellings, his wife, filed a motion for judgment under § 8-836 of the Code against defendant Mildred Ferris. The trial court, sitting without a jury, entered an order on August 3, 1971, finding for plaintiffs. On December 8, 1971, we granted defendant's petition for a writ of error.

Snellings's land adjoins Ferris's land on the east. Ferris claims that her eastern boundary line follows the meanders of a creek. The Snellings claim that their western boundary line follows a fence lying west of the creek. Title to the 12-acre tract between is in dispute.

Both parties claim title by recorded deeds. No deed describes the boundary line between them. Ferris's deed conveys a tract of 38 5/8 acres "more or less". Snellings's deed conveys 30 acres "more or less".

Neither party traces title from the Commonwealth or a common grantor. Neither claims against the other by adverse possession.

Arguing two assignments of error, appellant Ferris contends that Snellings's evidence is insufficient to support the judgment and that the evidence taken as a whole does not preponderate in favor of Snellings.

In boundary proceedings, those who initiate the proceedings bear the burden of proof by a preponderance of the evidence. When plaintiffs in such proceedings fail to prove paper title or title by adverse possession, they must bear that burden by proving a state of facts that will warrant the court in presuming a grant. *Bull Run Development Corp.* v. *Jackson*, 201 Va. 95, 109 S.E.2d 400 (1959).

If plaintiffs Snellings claim title by deed, their deed must specifically define the boundaries of their claim. *Bradshaw* v. *Booth*, 129 Va. 19, 105 S.E. 555 (1921). As we said in *Bradshaw*,

> "The extent of boundaries of land, and thus the title to land, cannot be established wholly by parol evidence, unsupported by written evidence of title, where title by adverse possession is not involved and where the case is one in which the title claimed is by deed and must have been derived by deed, if derived at all; for to hold otherwise would be to permit parol evidence to become an independent source of title, which by the weight of authority, and certainly in Virginia, is not permissible." *Id.* at 38, 105 S.E. at 561.

Plaintiffs Snellings's deed did not, specifically or generally, define the boundary, nor did any deed or any plat in their chain of title.

Since the Snellings do not claim by adverse possession, the question is whether the evidence preponderates in proving a state of facts that will warrant the court in presuming a grant. In *Bull Run*, we said:

> "Courts will presume a grant where one has for a long period of time held an uninterrupted possession of land while exercising proprietary rights. . . . The possession necessary to afford a presumption of a grant must be actual, open, adverse, exclusive and uninterrupted, as well as inconsistent with the existence of title in another. . . .
>
> . . .
>
> "The principle relied on by the plaintiff that possession under color of title constitutes a prima facie title is under the great weight

of authority restricted to those factual situations where the defendant is a mere intruder or trespasser without color of title." 201 Va. at 102, 109 S.E.2d at 405.[1]

To determine the question, we must weigh the evidence as a whole.

Plaintiff Carey W. Snellings testified that he had helped his predecessors in title build the fence which has been standing for forty years; that the fence had always been recognized as the boundary; and that since taking title to his land in 1961, he had not used the 12-acre tract until 1964 when a timber-cutting dispute arose.

Plaintiff Marion E. Snellings testified that her grandfather had cleared, cultivated, and grazed the 12-acre tract; that her predecessors in title and those of Ferris had always recognized the fence as the boundary line; and that no use had been made of the 12-acre tract for the last twenty years.

W. Hansford Abel, son of one of Ferris's grantors, testified that the fence was part of a boundary fence around the entire tract sold; that his father walked the fence with Ferris; and that his family planted one crop on the west side of the fence and Snellings's predecessors in title planted another crop on the east side.

Arthur Limerick, a cousin of Marion E. Snellings, testified that Snellings's predecessors in title had cut firewood from the 12-acre tract but Ferris's predecessors in title had not; that the fence had always been the boundary; and that the fence had once been relocated to incorporate a spring for the benefit of Ferris's predecessors in title.

Charles Cox testified that he and a neighbor had entered into an oral agreement with Snellings's predecessors in title to cut timber from the 12-acre tract and that Ferris, who was aware of the cutting, did not object.

Defendant Mildred Ferris, who with her husband acquired a deed in 1944, testified that her grantor Abel had told her and her husband that the dividing boundary followed the meanders of a creek lying east of the fence; that her property was not "fenced off" but was "fenced in for cattle"; that she had paid taxes on the 12-acre tract (as indicated on the tracing of the County "tax map"); that she had not used the land but was allowing the timber to grow; that the Snellings did not use or lay claim to the 12 acres until they began cutting timber in 1964, to which she objected; that Snellings's prede-

---

[1] This is an explication of the rule in *Brunswick Land Corporation* v. *Perkinson*, 146 Va. 695, 132 S.E. 853 (1926), cited by plaintiffs, and *Holladay* v. *Moore*, 115 Va. 66, 78 S.E. 551 (1913), cited in *Brunswick.*

cessors in title had not used the 12-acre tract since she acquired it; and that she brought suit in 1957 against a third party for cutting timber on the 12-acre tract.

Rush Boyer, a Virginia certified surveyor, testified that Ferris employed him in early 1958 to survey the land and prepare a plat; that he searched title to all of the land involved and all adjacent land, interviewed landowners in the community and prepared a plat, which, together with a later copy, showed Ferris's eastern boundary along the creek; that his title search disclosed a pre-Civil War survey and plat recorded in the Clerk's Office from which he took "one sure corner" and five points which he later located on the ground as part of the eastern boundary along the creek; that he found "a trace of part of an old fence along the greater portion of that stream" and "I dug and I found broken wire and I found posts at intervals and found enough to give a pattern"; that Snellings's land consisted of a 20-acre tract and two 5-acre tracts which lay apart from the 12-acre tract; and that the 38 acres Ferris acquired would be "12 acres short" if the Snellings's claim prevailed.

Leland L. Baker, Jr., appointed by consent of both parties as Commissioner in Chancery to receive testimony, conduct a title search, and make a report, found that the Snellings's title to the 20-acre tract and the two 5-acre tracts derived from a source extrinsic of the source of the 12-acre tract and fixed the boundary along the creek.[2]

Viewing the evidence in this case as a whole and measuring it against the standards defined in *Bull Run*, we hold that the plaintiffs have failed to bear the burden of proving by a preponderance of the evidence a state of facts that will warrant the court in presuming a grant. The judgment is reversed and the case remanded with instructions to enter an order fixing the true boundary line to be that shown in the plat of survey marked "Defendant's Exh. #3".

*Reversed and remanded.*

[2] When asked to consider Snellings's exceptions to the report, the trial court ruled that the statutes make no provision for referral to a Commissioner in boundary proceedings and disregarded Baker's recommendation. But both parties agreed that the testimony adduced before him could be considered by the trial court, and the report, incorporating the results of his 100-year title search, was included in the record on appeal.