## Richmond

CUSTIS FISHING AND HUNTING CLUB, INC., A VIRGINIA CORPORATION
v. WADE C. JOHNSON, ET AL.

November 26, 1973.

Record No. 8237.

Present, All the Justices.

*William R. Cogar (F. Claiborne Johnston, Jr.; John S. Barr; Mays, Valentine, Davenport & Moore,* on brief), for plaintiff in error.

*Donald N. Patten (Patten & Wornom,* on brief), for defendants in error.

COCHRAN, J., delivered the opinion of the court.

Custis Fishing and Hunting Club, Inc. (Custis Club), filed a motion for judgment under the provisions of Code § 8-836 against Wade C. Johnson, Maurice V. Johnson, Jr. and Joyce Johnson, his wife, (col-

lectively, the Johnsons), to establish the boundary line between Custis Club and Johnson properties. The trial court, sitting without a jury, heard the evidence *ore tenus*, and on September 20, 1972, entered a judgment order which established Custis Club's title to most, but not all, of the disputed property. We granted Custis Club a writ of error.

By deed dated May 2, 1904, Robert E. Lee [Jr.] and Juliet Carter Lee, his wife, conveyed to Custis Club, with general warranty of title, a tract of 50 acres, more or less, described on a plat attached, together with a mill and other improvements. By the same instrument the Lees conveyed with special warranty "all their right, title and interest, whatever the same may be, to the Mill Pond, adjoining thereto, as now existing, to the fullest limit of the said Mill Pond, the whole of said Mill Pond not appearing on the said plat . . . ." The property, also described as "all of the property now and long known as the 'Custis Mill' property," was part of the lands devised to Robert E. Lee [Jr.] by his grandfather, George Washington Parke Custis, who died in 1857.

George Washington Parke Custis had acquired the lands by 1797 deed of George Washington and Martha, his wife, and by 1799 grant of the Commonwealth which comprised 4,821 acres, including the lands previously acquired from the Washingtons. The grant from the Commonwealth contained a metes and bounds description which included the following:

". . . thence up the edge of the said Pond by its various turnings and windings to Dandridge's and Custis's Corner on that side, thence on Dandridge's line across the Pond to Seaton's, Richeson's and Custis's Corner, *thence along Seaton's line S. 65° E. 332 poles* . . . ." (Emphasis added.)

The Johnsons are the owners of property which adjoins the disputed portion of Custis Mill Pond. They trace their title to a deed of October 13, 1882, from Preston Lipscomb and Mary Ann, his wife, conveying to their daughter, Mary Corbin Martin, a parcel therein described as follows:

"An area of one hundred and twenty-four acres, part and parcel of the tract whereon the said parties of the first part now reside, called and known as 'Huntsville', near Custis' Old Mill, the boundaries of which said area of one hundred and twenty-four acres to be

as follows: Commencing at the corner on the main road leading from West Point to King William Court House, between the said tract, 'Huntsville', and the land lately owned by Charles Bray, following the said line down to Custis' Mill pond, thence down the line of said Mill Pond to a point to be determined by survey, from whence, by a line parallel with the aforesaid line between 'Huntsville' and the Bray tract to the said main road, will make the said compliment of one hundred and twenty-four acres."

Since 1904, members of the Custis Club have fished in Custis Mill Pond, which, with all its prongs and coves, has an area of approximately 100 acres. After 1965, the Johnsons moved some earth and debris into the pond and began to fish and to permit friends to fish there. Custis Club brought this action after the Johnsons refused the Club's demand that they refrain from using the pond.

The trial court ruled that Custis Club, under the Commonwealth grant of 1799, is the owner in fee simple of the Mill Pond north of "Seaton's Line". A new survey, made by Custis Club's surveyor with the trial court's subsequent approval, established this line as having a bearing of S 60° 19′ E, which the surveyor testified was "very close" to the original bearing of the line as described in the grant, allowing for magnetic variation over the years. As the Johnsons have assigned no cross-error, this ruling of the trial court is the final determination, as between the parties, of what Custis Club acquired under the Commonwealth grant. Our concern is thus limited to that portion of a prong of the Mill Pond, which Custis Club concedes it did not acquire by grant, extending south of Seaton's line and bounded on three sides by the Johnson property.

Custis Club contends that the trial court erred in not designating the boundary line to extend along the edge of the pond rather than along Seaton's line. The Club's claim to the portion of the pond that remains in dispute rests first upon presumption of grant from peaceful possession under color of title provided by the Lee deed.

■ A proceeding under Code § 8-836 *et seq.* to establish a boundary line is governed by the same principles of law that would be applicable in an action of ejectment. *Bull Run Development Corp.* v. *Jackson*, 201 Va. 95, 99, 109 S.E.2d 400, 403 (1959). If the plaintiff is unable to trace his title from the Commonwealth or other common grantor, he has the burden of proving facts that will warrant a jury in presuming a grant. *Ferris* v. *Snellings*, 213 Va. 452, 453, 192 S.E.2d

804, 805 (1972). Generally, a plaintiff must prevail, if at all, on the strength of his own title. *Page* v. *Luhring,* 208 Va. 643, 650, 159 S.E.2d 642, 649 (1968), *Bull Run Development Corp.* v. *Jackson,* 201 Va. at 99, 109 S.E.2d at 403. An exception to this rule permits the plaintiff to establish a prima facie case of ownership by showing that he has taken prior peaceful possession under color of title, but this exception is limited to cases in which the defendant is a mere intruder or trespasser without color of title. *Page* v. *Luhring,* 208 Va. at 650-51, 159 S.E.2d at 649-50, *Bull Run Development Corp.* v. *Jackson,* 201 Va. at 102-03, 109 S.E.2d at 405.

The Club's presumption of grant theory fails because the Johnsons are not mere intruders or trespassers. As owners of property adjoining the mill pond the Johnsons have acquired a colorable claim, asserted in their grounds of defense, to riparian interests extending to the center of the pond. *Providence Forge Fishing and Hunting Club* v. *Miller Mfg. Co.,* 117 Va. 129, 131, 83 S.E. 1047, 1048 (1915). *See Wickouski* v. *Swift,* 203 Va. 467, 469, 124 S.E.2d 892, 893-94 (1962). The 1882 Lipscomb deed did not exclude these interests by describing the property line as extending along the line of the pond, for in the absence of express exclusion by deed or contract, an owner adjoining a fresh water pond acquires whatever interest in the pond his grantor had, regardless of the use of descriptive boundary terms such as "along" or "with" the pond. *Providence Forge Fishing and Hunting Club* v. *Miller Mfg. Co.,* 117 Va. at 132, 83 S.E. at 1048. *See Leake* v. *Richardson,* 199 Va. 967, 103 S.E.2d 227 (1958). It is true that the Club's ownership of the bed of the pond north of Seaton's line precludes the Johnsons from asserting riparian interests in the pond lying over that portion of the bed. *Wickouski* v. *Swift, supra.* But the Johnsons still have a riparian claim to the portion of the pond south of Seaton's line for which the Club was unable to prove a grant of the bed. Hence, this case does not fall within the exception which would permit the Club to establish a prima facie case for a presumed grant of the disputed portion of the pond by proving prior peaceful possession under color of title.

It is unnecessary to consider whether the trial court erred in admitting in evidence the 1841 Dabney Plat, which, although not in the chain of title to either property, tended to indicate that the Johnsons owned several acres of the pond bed. Admission of the Dabney Plat, if error, was harmless because the Johnsons' riparian claim, unrebutted by any direct proof of a conflicting grant, was sufficient to establish

independently that the Johnsons were not intruders or trespassers without claim of title.

The Club next contends that it has acquired title to the entire pond by adverse possession. In *Leake* v. *Richardson, supra,* we affirmed the ruling of the trial court that the evidence was insufficient to establish title by adverse possession to a mill pond as to other landowners whose lands were described as bordering on the pond. We must now decide whether the evidence in this case, considered in the light most favorable to the Johnsons, differs sufficiently from that in *Leake* to require a reversal of the trial court's ruling that adverse possession had not been proved.

To establish title by adverse possession the plaintiff "must show actual, hostile, exclusive and continuous possession for the period of the statutory bar" by "acts of such notoriety that the true owner has actual knowledge, or may be presumed to know, of the adverse claim." *Leake* v. *Richardson, supra,* 199 Va. at 976, 103 S.E.2d at 234.

In *Leake* the plaintiffs or their predecessors for a period of more than 25 years had stocked the pond, fished in it, maintained the mill dam, repaired the spillway, employed caretakers who lived on the property and required people whom they found fishing without permission to leave. They had maintained a cabin as a clubhouse on a five acre parcel adjoining the pond. The County Game Warden, though doubtful that the pond was private, had arrested two people for fishing there without permission. The land surrounding the pond was wild and heavily wooded. The defendants testified that they did not know until shortly before the litigation commenced that the plaintiffs claimed the entire pond.

Custis Club for more than 60 years had excluded trespassers from the Custis Mill Pond by posting "No Fishing" signs and by employing caretakers to live on the property to prevent non-members from fishing; had erected a clubhouse on the 50 acre parcel to accommodate members; had frequently stocked the pond with fish; had rebuilt the mill dam when it was broken in 1913 and again in 1935; had built a cofferdam in the pond above the mill dam in 1922 and had improved this structure in 1940; had constructed hurdles and sandboxes in various locations in the pond to enhance the breeding of fish; had built a new spillway in 1957 at a cost of $9,000; and had for a number of years lowered the water level of the pond about 2-½ feet for three months each year in order, by exposing five or six feet of pond bed around the edges, to provide better breeding conditions for fish.

The County Game Warden testified that he had known the Custis Mill Pond "practically" all his life, had always understood that it was owned by the Club, and had from time to time arrested persons who were fishing there without permission. Club members, caretakers, and the Deputy Clerk of the Circuit Court of King William County testified to their understanding and belief that Custis Club owned the pond in its entirety. Newspaper articles published in 1905, 1949 and 1957 reported that the pond was owned by Custis Club. The record shows that the land surrounding the pond had been maintained in about the same state of nature that prevailed when Custis Club purchased it in 1904, except for some tree harvesting. The mill, which had been operated by caretakers of the Custis Club, closed in 1949. Until 1967, when the Johnsons built a road over their property to the pond, the only road to the pond, other than old logging roads that were closed, ran through the Club property to the dam.

Several witnesses for the Johnsons testified that they had fished in the Custis Mill Pond without seeking permission from Custis Club. James Cowardin, having received permission from the Johnsons' predecessor, Howard, fished there several times in February and March, 1965. Mildred P. Hite, whose family owned property adjoining the pond, testified that she had fished there and never considered it necessary to get permission from the Club. Wade C. Johnson, a defendant, testified that he had fished there once as a guest of a Custis Club member, and that he had fished and given permission to others to fish there without Custis Club permission after the Johnsons had acquired an interest in the property. He admitted that the Club caretaker had ordered him and two friends from the pond on one occasion.

Custis Club's employment of caretakers and posting of "No Fishing" signs did not, as a matter of law, amount to adverse possession of the pond. The Club's efforts to exclude the general public were not inconsistent with the rights of the Johnsons as riparian owners. See *Improved Realty Corp.* v. *Sowers*, 195 Va. 317, 324, 78 S.E.2d 588, 592 (1953); *Providence Forge Fishing and Hunting Club* v. *Miller Mfg. Co., supra*, 117 Va. at 132-33, 83 S.E. at 1048-49. Absent efforts intended specifically to exclude the Johnsons or their predecessors, this aspect of the Club's conduct was neither exclusive nor hostile as a matter of law with respect to the Johnsons.

The Club did not establish adverse possession by stocking the pond with fish, or by maintaining and repairing the mill dam and spillway, for in *Leake* we held that these actions were insufficient for that pur-

pose. Likewise, the placing of hurdles and sandboxes in the pond to improve the fishing were not acts of adverse possession, for this conduct was not inconsistent with the rights of the Johnsons.

The Club relies heavily on its annual lowering and raising of the water level as evidence of open and notorious display of hostile and exclusive possession of the pond. The record fails to show the number of years during which the Club had changed the water level, but, assuming that this practice had continued for the required period of time, we conclude that it was not the kind of action which would establish title by adverse possession. Custis Club's right to maintain the mill dam and Mill Pond has not been challenged. Having the right to maintain the water level to the high water mark permitted by the dam, the Club could maintain a lower water level without incurring liability to the Johnsons. *See Kiwanis Club Foundation, Inc., of Lincoln* v. *Yost*, 179 Neb. 598, 602, 139 N.W.2d 359, 361 (1966); *Hood* v. *Slefkin*, 88 R.I. 178, 186, 143 A.2d 683, 687 (1958). Nor could Custis Club be charged with trespassing on the property of the Johnsons for raising the water level again to the high water mark. Accordingly, we cannot say as a matter of law that the control exercised by the Club over the water level of the pond constitutes a hostile act for purposes of establishing title by adverse possession.

We conclude that there is no reversible error in the rulings of the trial court and the judgment order will be

*Affirmed.*