## Richmond

R. Lee Page v. Henry G. Luhring, Sr., Et Al.

March 4, 1968.

Record Nos. 6542, 6543.

Present, All the Justices.

*Henry L. Lam (Joseph J. Lawler; Kellam and Kellam; Lam and Hudgins*, on brief), for appellant in Record Nos. 6542 and 6543.

*Grover C. Wright, Jr., Edward T. Caton, III (Caton & Wright*, on brief), for appellees in Record Nos. 6542 and 6543.

I'Anson, J., delivered the opinion of the court.

Henry G. Luhring, Sr., et al., instituted an action of ejectment against R. Lee Page, defendant, alleging that Page had entered upon a part of his lands, situate in Virginia Beach, Virginia, taken possession thereof, and was engaged in erecting a bulkhead along the shoreline of his property bordering on the eastern side of Crystal Lake. Prior to the institution of the ejectment proceeding, the trial court had enjoined Page from entering on the disputed lands and proceeding with the erection of the bulkhead.

Luhring claimed title to the disputed lands under his deed from Bertram B. Roberge, et ux., dated August 13, 1964, conveying site

# MAP OF
# LINKHORN PARK
### PROPERTY OF
## VIRGINIA BEACH DEVELOPMENT CO.
AND ADJACENT PROPERTIES

SCALE 1:200

PRINCESS ANNE CO., VA.                    NOV. 1916.

J.M. BALDWIN, C.E.
C.H. NEFF, GOLF ARCH'T.
NORFOLK, VA.

58, which includes the disputed area and parts of sites 57 and 59 on the plat of Linkhorn Park, shown on a plat and survey made of the sites by W. B. Gallup, dated February 25, 1938. The Gallup plat and survey were based on a "Map of Linkhorn Park" prepared by J. M. Baldwin, C. E., and recorded on November 29, 1916. A part of the Linkhorn Park plat is here reproduced.

Page claimed ownership of the disputed lands by virtue of his record title to lots 178, 179, 207, 208 and an unnumbered triangular lot adjacent to 179, as shown on the map of "The Hollies" prepared by Thomas W. Hodges and recorded on December 13, 1884. He contended that this plat shows that the western boundary line of his lots extends across Holly road and that lots 179 and 208 and the unnumbered lot adjacent to lot 179 run to and along the eastern shoreline of Crystal Lake. A part of The Hollies plat is here reproduced.

Luhring contended that the Baldwin map of Linkhorn Park shows that the western boundary line of the Page property is the east side of Holly road, which road is also the dividing line between The Hollies and Linkhorn Park subdivisions; that the western boundary line of Page's lots 179, 208 and the unnumbered triangular lot adjacent to lot 179 does not extend to and along the eastern shoreline of Crystal Lake; that the map of Linkhorn Park shows that the eastern boundary line of his site 58 is the west side of Holly road, and that a part of the western boundary line of the site runs along the shoreline of Crystal Lake.

Baldwin's Linkhorn Park plat shows that Luhring's site 58 includes parts of lots 178, 179, 207, 208 and the unnumbered triangular lot adjacent to lot 179, as shown on Hodges' plat of The Hollies which are claimed by Page. This is the area in dispute, and is shown by wide broken lines forming a quadrangular figure on the plat made by Baldwin and Gregg on June 17, 1964, here reproduced.

The trial court heard the action of ejectment without a jury, and treated it as a proceeding to establish the boundary line of coterminus lands under § 8-836, Code of 1950, 1957 Repl. Vol. After handing down a written opinion, the trial judge entered his order holding that Luhring was the owner of the disputed lands, and he also entered a decree permanently enjoining Page from interfering with Luhring's possession and use of the property. The two cases were consolidated on this appeal.

In his written opinion, the trial judge said that there is an apparent overlap in the recorded plats of The Hollies and Linkhorn Park covering the lands in dispute; that The Hollies plat of 1884 is "mani-

A MAP
OF THE
HOLLIES
ON THE
ATLANTIC OCEAN
ADJOINING
VIRGINIA BEACH PROPERTY
OWNED BY
COLLIN'S HEIRS
SURVEYED BY
J. A. M.

Scale 1in. = 100ft.

D B 57 Page 417
Dec. 13, 1884

SURVEY

LOTS 178, 179, 205, 206, 207, 208
07 LOTS 177 & 204
AND THE WEST ½ OF LOTS 177 & 204
MAP OF THE
HOLLIES
VIRGINIA BEACH, BOROUGH
VIRGINIA BEACH, VIRGINIA
SCALE: 1" = 50'          JUNE 17, 1964

festly ineptly drawn" and long has been regarded as unreliable by title examiners, surveyors and civil engineers, who have resorted to two unrecorded plats of The Hollies on file in the office of Baldwin and Gregg, Civil Engineers and Surveyors, prepared in 1926 and 1938; that both of the unrecorded plats show the eastern line of Holly road as the western boundary line of The Hollies, which road is also shown in the same location on the Baldwin plat of Linkhorn Park; and that two annexation orders entered by the Circuit Court of Princess Anne County in 1923 and 1928 recognized the east side of Holly road as shown on the Baldwin plat of Linkhorn Park as the boundary line between The Hollies and the Linkhorn Park subdivisions.

Page says that the trial judge erred (1) in holding that Luhring was the owner of the disputed lands because he did not trace his chain of title back to the Commonwealth or to a common grantor; and (2) in relying on his independent examination of records in the clerk's office in deciding the cases.

Luhring traced his record chain of title to a part of a 1200-acre tract conveyed by deed of the Seaside Hotel & Land Company to Virginia Beach Railroad Improvement Company, dated August 15, 1883. The deed contains descriptions of ten separate parcels of land comprising the 1200 acres, and the entire tract is shown on a "Map of Virginia Beach" which was recorded in July, 1900. The lands shown on the Baldwin Linkhorn Park subdivision plat were carved out of the 1200-acre tract.

Henry T. Marshall, an attorney, who examined the title to the properties on behalf of Luhring, testified that in his opinion Luhring had a good and marketable title to the disputed land. He said, however, that the plat designated as "Map of Virginia Beach," showing the 1200 acres, was vague. He was unable to reconcile the northern line of this plat with the northern line of the plat of Linkhorn Park. None of the descriptions in the deed comprising the 1200 acres shown on the map of Virginia Beach made any reference to Oyster Bay or Rainey's Pond (now Crystal Lake) which abuts the area in dispute. He further said that he was unable to identify any description in the deed which extended the eastern boundary line of Luhring's site 58 over and beyond the western boundary line shown on the Hodges plat of The Hollies.

Page traced his record title to a deed dated September 14, 1854, from Thomas G. Williams, et al. to William Collins and George T. Peete. The deed describes the land conveyed as bounded on the west

by the pond or cove and the main road, containing 100 acres, more or less. This tract was partitioned by the heirs of Collins and Peete in a suit filed in May, 1884, in the Circuit Court of Princess Anne County under the style of *Hill* v. *Peete*. The original papers in the suit could not be found, but a sketch, together with a metes and bounds description, was filed with the commissioner's report partitioning the Collins-Peete property and recorded in 1884. The partition deed incorporates by reference the metes and bounds description, which recites that one of the boundary lines runs "to the head of Rainey's Pond [now Crystal Lake], thence to a post at the corner of The Hollies property and Hall and Frazier."

The Hollies subdivision was carved out of a part of the Collins-Peete property and is shown on the Hodges plat of The Hollies. This recorded plat shows the Western boundary of lots 208, 179 and an unnumbered triangular lot adjacent to lot 179 as running along the irregular shoreline of Lake Rainey or Oyster Bay (now Crystal Lake).

On July 20, 1886, lots 207 and 208 on the Hodges plat of The Hollies were conveyed by Lizzie Hill, owner of a part of the partitioned property, to Charles A. McCourt, et ux. The western boundary of the conveyance was described as "thence westerly * * * along the shores of said bay to its intersection with Avenue E. [now 49th street]."

Robert B. Cromwell, Jr., an attorney testifying on behalf of Page, said that he was unable to find any description in the deed conveying the 1200-acre tract, the alleged source of Luhring's title, showing any of the property touching on Oyster Bay or Rainey's Pond (now Crystal Lake).

Frank G. Tarrall and P. Porcher Gregg, expert land surveyors, were appointed by the court to study the ownership of the disputed area and to make a finding as to the boundary line between The Hollies and the Linkhorn Park plats, but they were unable to agree. Tarrall testified that after viewing the plats of record, plats not of record, and making a survey of the property, he was of opinion that none of Page's lands bordered on the shoreline of Crystal Lake and that the western boundary line of his property was the east side of Holly road. He was also of the opinion that the eastern boundary line of Luhring's site 58 was the west side of Holly road.

Gregg a partner of J. M. Baldwin until his death and now a member of the firm of Baldwin and Gregg, testified that he was unable to locate the field notes used by Baldwin in the preparation of the

Linkhorn Park plat. He was of opinion, however, from an examination of the plats, deeds and surveys, that there was an obvious overlap between the plats of The Hollies and Linkhorn Park; that the eastern boundary line of the Linkhorn Park plat had been erroneously extended by Baldwin to include a part of Page's land shown on the Hodges plat of The Hollies; that the western boundary line of Page's property runs along a part of the eastern shoreline of Crystal Lake; and that Page was the owner of the land in the disputed area.

Both Page and Luhring claim title and right to possession of the disputed land under the respective plats referred to in their deeds. Neither party claims title by adverse possession or the presumption of a grant. Thus the crucial question presented is whether Luhring presented sufficient evidence to prove record title to the disputed land.

As a general rule, in an action in ejectment as well as in a proceeding under Code § 8-836 to establish a boundary line of coterminus lands, in order for a plaintiff to prevail he must do so on the strength of his own title, and when he relies on his own paper title he must trace an unbroken chain of title back to the Commonwealth or to a common grantor or prove such a state of facts as will warrant the presumption of a grant. *Brunswick Land Corp.* v. *Perkinson,* 146 Va. 695, 704, 707, 132 S. E. 853, 856, 857 (1926); *Prettyman* v. *M. J. Duer & Co.,* 189 Va. 122, 136, 137, 52 S. E. 2d 156, 163 (1949); *Development Corp.* v. *Jackson,* 201 Va. 95, 99, 109 S. E. 2d 400, 403 (1959).

In the present case, Luhring has failed to trace an unbroken chain of title back to the Commonwealth or to a common grantor. He claimed that the land in the Linkhorn Park subdivision was carved out of the 1200-acre tract shown on the plat of Virginia Beach, but Luhring's title examiner could not say which description in the deed conveying the acreage covered the property in dispute despite his conclusion that the property in the Linkhorn Park plat lay within the boundaries of the property shown on the plat of Virginia Beach. Moreover the deed to the 1200-acre tract made no reference to Oyster Bay or Rainey's Pond (Crystal Lake).

Luhring says that his prior peaceful possession of the disputed land under color of title constituted prima facie evidence of ownership and seisin sufficient to warrant a judgment of ownership unless defendant shows a better title, which he has not done.

The principle relied on is a recognized exception to the general rule that a plaintiff must win on the strength of his own title. How-

ever the exception is restricted to those situations where the defendant is an intruder or trespasser without color of title. *Development Corp.* v. *Jackson, supra,* 201 Va. at 102, 103, 109 S. E. 2d at 405. See also 45 Va. L. Rev. 1455, 1456. Page clearly was not an intruder or trespasser without color of title, and the exception to the general rule is not applicable here.

Luhring has not borne the burden of proof required of him to establish his right to possession of the disputed area and he cannot prevail in this case.

In view of our conclusion, it is unnecessary to discuss the other assignment of error.

Accordingly, the order entered by the court below in the ejectment proceeding is reversed and judgment is here entered for the defendant, Page. See Code § 8-820. The decree permanently enjoining Page from entering on the property in dispute is reversed, the injunction dissolved, and the bill of complaint dismissed.

*Reversed and final judgment and final decree for the defendant.*