## Richmond

### CENTRAL NATIONAL BANK, ET AL. v. LELIA FLORENCE, ET AL.

January 20, 1975.

Record No. 731029.

Present, All the Justices.

*Fred J. Bernhardt, Jr.; Henry M. Taylor, Jr. (Florance, Gordon & Brown,* on brief), for plaintiffs in error.

*Charles O. Boyles (Cary A. Ralston; Mizell, Gayle & Boyles,* on brief), for defendants in error.

Cochran, J., delivered the opinion of the court.

In 1936, William M. Taylor died seized and possessed of a certain lot fronting forty feet on the south side of Cheatham Street in the City of Richmond. The appellees, heirs at law of Taylor, brought this action as plaintiffs under Code § 8-836 *et seq.* (Repl. Vol. 1957), against appellants and Willie Atkinson and Elizabeth Atkinson, his wife, as defendants, to establish the eastern and western boundary lines of that lot.

In the amended motion for judgment the coterminous landowners were alleged to be the Atkinsons on the west and appellants Charlie J. Jackson and Alease S. Jackson, his wife, on the east. A jury trial was held. At the conclusion of the plaintiffs' evidence the trial court struck the evidence as to the Atkinsons and entered an order on December 5, 1972, establishing the plaintiffs' western boundary line as the Atkinsons' eastern line, based on the Atkinsons' claim of adverse possession under color of title. This order, to which no cross-error was assigned, is now final as to the parties.

At the conclusion of the plaintiffs' evidence and again at the conclusion of all the evidence, the trial court overruled appellants' motions to strike the evidence as to them. The jury returned a verdict establishing plaintiffs' eastern line and the Jacksons' western line in such manner as to bisect the Jacksons' house and lot and to award the Taylor heirs a lot fronting fifty feet on the south side of Cheatham Street, ten feet more than were claimed in their amended motion for judgment. The trial court, holding that the jury had been improperly instructed, set aside the verdict in order to prevent a "perversion of justice" and entered the judgment order appealed from that established the common boundary line between the Taylor heirs and the Jacksons ten feet west of the line fixed by the jury, but in a location that still extended through the Jacksons' house and lot. The judgment order also awarded plaintiffs a writ of possession and ordered the Jacksons and the trustees under their deeds of trust to remove all encroachments within sixty days.

The lands in controversy were portions of a tract of approximately three acres in Chesterfield County, now in the City of Richmond, conveyed to Artemus Henderson and George Johnson by deed dated July 17, 1911, of J. H. Blackwell and wife, recorded in the Clerk's Office of the Circuit Court of Chesterfield County. The tract was therein described as being bounded on the west by the Atlantic Coast Line Railway (now Seaboard Coastline Railway) right-of-way, on the north by lands of Branch Cheatham's estate, on the south by Brander's Bridge Road (later Swineford Road and now Terminal Avenue), and on the east by the acre of land "reserved by Robert Brown."

Henderson and Johnson subdivided the tract and sold off lots. By deed of July 19, 1915, recorded August 5, 1915, they conveyed to John W. Brinser four lots designated as four, five, fourteen

and fifteen, "on a map by said Henderson and Johnson." Lots four and five were described as fronting on the northern line of Swineford Road 80 feet commencing 145 feet "from the intersection of a fifteen-foot road laid off at right angles from Swineford Road and running to the land formerly Branch Cheatham" and running back between parallel lines 163 feet, more or less, to a 12-foot alley. Lots fourteen and fifteen were described as lying immediately in the rear of lots four and five and commencing 145 feet "from the intersection of the western line of the fifteen-foot road laid off by Henderson and Johnson where it intersects the road laid off along estate of Branch Cheatham," fronting on the southern line of said road along the line of Branch Cheatham's estate 80 feet toward the Atlantic Coast Line Railway, and running back between parallel lines 163 feet, more or less, to the 12-foot alley.

By deed of August 20, 1915, recorded October 1915, Henderson and Johnson conveyed to William M. Taylor a lot therein described as follows:

"All of that certain lot of land in the County of Chesterfield near the City of Richmond and fronting forty feet on a fifteen foot road laid off out of the estate of the late Branch Cheatham parallel to the road commonly called Swineford Road leading from Turnpike to the Atlantic Coast Line Railroad, and commencing on said road one hundred and five feet from the intersection of a fifteen foot road laid off and at right angles to the road first mentioned and leading from Swineford Road to the road called Cheatham Road aforesaid, and fronting on the aforesaid road laid off out of the estate of Branch Cheatham forty (40) feet toward the Atlantic Coast Line Railroad, and running back between parallel lines one hundred and sixty three feet, more or less, to an alley twelve feet wide and is designated as lot number sixteen on the map of lots laid off by said Henderson and Johnson out of the parcel of land conveyed to said Henderson and Johnson by James H. Blackwell and wife July 17, 1911, Deed Book 125, p. 112, and to which reference is made for further description of said lot."

Taylor constructed on his lot a dwelling known as No. 2704 Cheatham Street which was condemned by the City of Richmond in 1963.

All deeds from Henderson and Johnson conveyed lots described by lot numbers on the map of Henderson and Johnson lots and by reference to the fifteen-foot private road laid off between Swineford Road and the road along the Cheatham estate, now known as Cheatham Street. No plat of the lots was recorded, however, until 1925 when Arabella Robinson and husband conveyed to Paul W. Brinser lot three on an attached plat of Henderson and Johnson lots, lot three having been conveyed to Arabella Robinson in 1913 by deed recorded several years later. The plat is reproduced herein.

N. & W. R. Rt. Road

Alleghany Box Co.

Springgosa Road to B.W.P. Turnpike

Henderson

Cheatham Road.

Jasper

| 163± | | 162± | |
|---|---|---|---|
| 40 | 9 | 10 | 40 |
| 40 | 8 | 11 | 40 |
| 40 | 7 | 12 | 40 |
| 40 | 6 | 13 | 40 |
| 40 | 5 | 14 | 40 |
| 40 | 4 | 15 | 40 |
| 40 | 3 | 16 | 40 |
| 40 | 2 | 17 | 40 |
| 40 | 1 | 18 | 40 |

Alley 12 ft wide.

163±   160±

15 ft road from Henderson by Johnson.

Map of Lots
Henderson and Johnson
near Stop No 9, laid off
and sold by Artemus Henderson
and George Johnson.

By deed dated July 18, 1917, Henderson and Johnson divided their eight remaining unsold lots as shown on the map made by Henderson and Johnson. Johnson acquired lots seven, eight, twelve and thirteen, and Henderson acquired lots one, two, seventeen and eighteen. Lots one and two were described as fronting together 105 feet on Swineford Road, and lots seventeen and eighteen as fronting together 105 feet on Cheatham Road, thus increasing the lot sizes by incorporating the 25-foot strip shown on the map. Thereafter, lot seventeen was described as fronting 52.50 feet on Cheatham Road, and it was so conveyed in 1965 to the Jacksons, with a plat attached showing a new dwelling constructed thereon and designated as No. 2702 Cheatham Street.

In 1948 the Atkinsons acquired title to No. 2706 Cheatham Street by deed from the estate of J. W. Brinser, deceased, which described the property as beginning 215.70 feet east of the Atlantic Coast Line Railroad, fronting 39.55 feet on Cheatham Street as widened, and being a part of lots fifteen and sixteen on the map of Henderson and Johnson lots, although J. W. Brinser had never acquired by deed any interest in lot sixteen. The eastern line of the Atkinson lot, as established by the trial court, conformed to the 1948 deed description and gave the Atkinsons the western 15.25 feet of lot sixteen.

The objection of the Taylor heirs to introduction into evidence of the Henderson and Johnson map, because the map was not in their chain of title and was not recorded until ten years after recordation of the Taylor deed, was overruled by the trial court. It is apparent that if the fifteen-foot road from which calls were made in the Taylor deed, and other deeds, was located as shown on the Henderson and Johnson map, all lots, including Taylor's, would conform correctly to those shown on the map. The Taylor heirs assert that Taylor followed the description set forth in his deed and that his eastern line correctly begins 105 feet west of the western line of the trace of an old fifteen-foot road, and thus extends through the Jacksons' house and lot. However, the record and plats therein indicate that the road from which Taylor apparently measured was approximately twelve feet to the east of the road described in the deed.

Although the Taylor heirs, in their amended motion for judgment, also claimed title by adverse possession, they adduced no evidence to support this theory and elected to rely solely on

the description in their deed, as explained by the testimony of several witnesses.

George M. Stephens, Jr., a certified land surveyor, introduced into evidence a plat which he had prepared showing the properties in question. He had not made a survey but, as requested by plaintiffs' counsel, had started his measurements from the western line of the trace of an old road, which his plat showed to be approximately twenty-seven feet east of the eastern line of the property at No. 2700 Cheatham Street (lot eighteen). Stephens testified that by measuring from this point the Jackson house would extend over the western line of its lot by about eighteen feet and there would be a ten-foot wide strip between the western line of the Taylor lot and the eastern line of the Atkinson lot. He conceded that the trace of old road may not be the one shown on the Henderson and Johnson plat, and that it does not meet the description contained in the Taylor deed because it is not perpendicular to Cheatham Street.

Stephens identified a plat of the properties made by his father in 1947, on which improvements were shown, which was inconsistent with his plat. His father surveyed the properties and used the railroad right-of-way rather than the trace of old road, as his beginning point. This plat showed, among other things, that the Taylor dwelling then extended over the western line of lot seventeen.

Dallas H. Oslin, Jr., a senior planner with the City of Richmond, introduced, over objection by appellants, various aerial photographs showing the area around Cheatham Street. He testified that he could determine from two of the photographs that there was a dirt road running southwardly from Cheatham Street and there were houses on that street, but he could not determine the exact location of the dirt road or houses. He conceded that the road was not disclosed on the topographical map prepared by the City of Richmond in 1928, for the purpose of locating buildings, and introduced as a plaintiffs' exhibit.

Russell Clemmer, a right-of-way supervisor for Virginia Electric and Power Company, carried papers in the Cheatham Street area from about 1930 to 1936. He testified that he rode his bicycle over an old dirt road leading from Terminal Avenue to Cheatham Street, that the old road was perpendicular to Terminal Avenue, and that it was in poor condition. Clemmer

introduced a copy of the Virginia Electric and Power Company easement, with plat attached, showing the grant of a utility easement along a road almost perpendicular to and leading southwardly from Cheatham Street and almost parallel to the railroad. He conceded that the trace of old road and utility lines shown on the plat of Stephens, Jr., were not perpendicular to Cheatham Street or parallel to the railroad.

Gerald T. Hanson, who had been living at 2708 Cheatham Street, adjacent to the Atkinson property on the west, since 1939, testified that he recalled the old dirt road leading from Cheatham Street to Terminal but did not know how long the road had been there or when the utility lines were installed. He also testified that, after the 1942 annexation into the City of Richmond, a City surveyor showed him a plat on which his eastern property line (the Atkinsons' western line) ran through his house rather than along a line of trees as he had assumed. He had assumed that his house was within the lot lines and had not had a survey made or employed an attorney when he bought the property.

Lelia Taylor Florence, a daughter of William M. Taylor and one of the plaintiffs, testified that she lived in the Taylor house from the time it was built in 1920 or 1921 until 1929 when she married and moved away. She recalled the old dirt road as the only means of access to Cheatham Street. Mrs. Florence introduced letters from attorneys representing the owners of adjoining land to the east, now owned by the Jacksons, advising that the condemned Taylor house encroached on their property, on which the owners planned to build a new house, and requesting that she remove the Taylor house. She did not remove the house, and the adjoining owners removed it and built a new house on what she believed to be part of the Taylor lot. Mrs. Florence testified that she did not attempt to prevent the Taylor house from being demolished because her attorney advised her that "she had a very tough case," and that she also took no action to prevent construction of the new house.

After the appellants' motion to strike the evidence was overruled, appellants put on their evidence which, in addition to various deeds and plats hereinbefore referred to, included the testimony of various witnesses.

Charlie J. Jackson, an appellant, testified that when he purchased No. 2702 Cheatham Street in 1965 he had a survey

made which showed that his house was located within his lot lines. He testified that there was a vacant strip of land between his house and the Atkinson lot, that he had filled in an old well and kept the grass cut on the strip, and had ascertained the ownership and tried unsuccessfully to buy it from Mrs. Florence.

William L. Miller, Jr., a certified land surveyor, testified that he had surveyed the Jackson lot when it was bought by the Jacksons and also when it was bought by their predecessor in title. Using the deed descriptions, the Henderson and Johnson map, and a survey made by the City of Richmond, he began his survey at the stone monument at the eastern edge of the railroad right-of-way. He testified that he would not use a trace of an old road unless the lines of the old road were well defined and he had no other choice.

Miller further testified that the drawing made by Stephens, Jr., incorrectly shows a strip of land about ten feet wide between the western line of the Taylor lot and the eastern line of the Atkinson lot, and that the earlier survey of Stephens, Sr., showed no such strip. If the Stephens, Jr., plat were used, the lot lines would not line up and there would also be a vacant strip of land between lot ten, the westernmost lot shown on the Henderson and Johnson map, and the railroad right-of-way, which was not correct, as lot ten abuts the right-of-way. Miller also testified that the descriptions contained in the deeds to lots ten through eighteen coincided with the Henderson and Johnson plat, and that he had not seen any other map which purports to show the lots in this subdivision. He found that the houses on the Atkinson and Hanson lots were within the lot lines described in the deeds conveying these properties to their respective owners. Miller also found that the trace of an old road as it exists does not meet the description of the fifteen-foot private road set forth in the original deeds.

Robert M. Blankenship, III, a certified land surveyor, had, on motion of the Taylor heirs, been appointed by the trial court to survey the Taylor property. He introduced his report and plat (Defendants' Exhibit L) and testified that his independent survey confirmed Miller's surveys exactly. Blankenship had discovered that the deed to the Atkinsons conveyed a part of lot sixteen which had previously been conveyed to William Taylor. His plat of the Taylor property showed it to be lot sixteen as shown on the Henderson and Johnson map (less the fifteen-foot

strip on the south side of Cheatham Street acquired by the City of Richmond for street widening purposes), and showed the only encroachment to be a portion of the Atkinson dwelling extending across the western line. Thus, the Taylor lot as shown on the plat, fronted forty feet on Cheatham Street and extended back approximately one hundred forty-eight feet to the twelve-foot alley.

Blankenship testified that the trace of the old road could not be used as a starting point because it did not meet the description in the original deeds conveying lots ten through eighteen and the location of old roads is subject to change with usage. He also found that the road shown on the Henderson and Johnson map as lying west of the subdivision was inside the railroad right-of-way.

A. G. Harocopos, a certified land surveyor, who in 1970 had surveyed the property adjoining the Henderson and Johnson subdivision on the east, testified that his survey, a plat of which was introduced into evidence, coincided with the Miller and Blankenship surveys, and that the trace of the old road is located on the property he surveyed and is not in the Henderson and Johnson subdivision.[1]

Having initiated the proceedings the Taylor heirs had the burden of establishing the boundaries of their property by a preponderance of the evidence. As they claim title by deed, their deed must specifically define the boundaries of their claim. *Ferris* v. *Snellings*, 213 Va. 452, 453, 192 S.E.2d 804, 805 (1972).

The trial court did not err in admitting into evidence the unauthenticated aerial photographs showing the area around Cheatham Street. Two of the photographs purport to show an old trace of road connecting Cheatham Street and Terminal

---

[1] Examination of the various plats in the record discloses that the property surveyed by Harocopos, as shown on his plat, includes the fifteen-foot private road shown on the Henderson and Johnson plat as part of that subdivision. The plat of the City of Richmond, dated May 10, 1945, showing acquisition of a fifteen-foot strip along the south side of Cheatham Street for street widening, shows the fifteen-foot private road as located on the Henderson and Johnson map.

The plat attached to the utility eastment acquired by Virginia Electric and Power Company in 1927 shows the easement to extend across property of Shields, who owned lots in the Henderson and Johnson subdivision, along the western line of a road that was almost perpendicular to Cheatham Street. The Harocopos and Blankenship plats indicate that the utility line is now located on property that was never in the subdivision, and that it extends along the trace of an old road that was not perpendicular to Cheatham Street.

Avenue, but at least one fails to show any such trace. None shows any boundary lines. There was other evidence of the existence of an old trace of road east of the Henderson and Johnson subdivision and, indeed, the jury was taken to view the area. It was within the discretion of the trial court to admit the photographs for whatever corroborating weight they might have, *Dir. Gen'l* v. *Hubbard's Adm'r.*, 132 Va. 193, 111 S.E. 446 (1922), and this assignment of error is without merit.

The trial court admitted into evidence the map of the Henderson and Johnson subdivision. Although the Taylor heirs objected to the admissibility of this map they have assigned no cross-error to the court's ruling, and their objection will not now be noticed. Rule 5:7. Moreover, the map was referred to in all deeds in the record from Henderson and Johnson. There is evidence that one lot was conveyed as early as 1913, and it is logical to infer that the map, though undated and unauthenticated, was in existence and known to interested parties prior to execution of the deeds to Brinser and to Taylor in 1915 which referred to it.

The dispositive question is whether the Taylor heirs have proved by a preponderance of the evidence that the boundary lines of their property are properly to be established by using as a monument, from which to measure, a trace of road that lies to the east of the Henderson and Johnson subdivision. After consideration of all the evidence we hold that the Taylor heirs have failed to carry their burden of proof.

■ There is evidence of the existence of some time in the past of an old road, of undetermined origin, east of the Henderson and Johnson subdivision. This road does not conform to that shown on the subdivision map or to the description set forth in the various deeds to lots. There is no evidence that a road was ever opened in the location designated on the Henderson and Johnson map. It would be pure speculation to suggest that the subdividers opened a private road across property which they did not own, when their map and deeds show that the road was to be located entirely on their own land. The evidence of the Taylor heirs shows, at most, that if their lot is measured from the trace of the old road on property adjoining the subdivision, the Taylor dwelling was constructed within its lot boundaries. But this result requires measurement from an undefined and undefinable monument. It is true, as the Taylor heirs argue, that

a city street may be used as a monument because of its permanent nature. 2 *Minor on Real Property* 1421, § 1077 (2d ed. F. Ribble, 1928). The private road in question, however, was not a city street but a rural byway that lacked the indicia of permanency.

The evidence of three surveyors, Stephens, Sr., Miller, and Blankenship, whose surveys were confirmed by a fourth surveyor, Harocopos, is that precise measurement of the Taylor lot must be made from the best available monument, the Seaboard Coastline Railroad right-of-way. Any other speculative location of the lot must give way to the specificity achieved by using the railroad as the definable point from which calls may most accurately be made. Indeed, Stephens, Jr., the only surveyor who testified for the Taylor heirs, had not made a survey of the property in question.

The judgment is reversed and the case remanded with instructions to enter an order fixing the eastern line of the Taylor lot in common with the western line of lot seventeen as shown on the plat of survey dated December 20, 1971, made by Robert M. Blankenship, III, and marked "Defts Ex L." *Cf. Ferris* v. *Snellings, supra.*

*Reversed and remanded.*